UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RONALD DUANE AUST | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Civil Action No.: 7:14-cr00122 |
| MONTGOMERY SURGERY ASSOCIATES, LLC d/b/a LewisGale Physicians S.W. Va. Ear, Nose And Throat Assoc. (Montgomery Co.) | ) |
| Defendant. | ) |

## COMPLAINT

Comes Now the Plaintiff, Ronald Duane Aust, by counsel, and files this Complaint requesting judgment against the defendant and in support thereof states as follows:

### PARTIES

1. The plaintiff, Mr. Aust, is a citizen of Virginia.

2. Montgomery Surgery Associates, LLC d/b/a LewisGale Physicians S.W. Va. Ear, Nose and Throat Assoc. (Montgomery Co) is a limited liability company that maintains its principal place of business at One Park Plaza, Nashville, TN 37203.

3. On May 13, 2013, Montgomery Surgery Associates employed Dr. Aaron J. Prussin, an otolaryngologist, who was licensed to practice medicine in Virginia.

4. At all times pertinent to this action, Dr. Prussin was acting in the scope and course of his employment with Montgomery Surgery Associates.

24801/1/6588805v1

5.  Mr. Aust and Dr. Prussin had a physician-patient relationship at least until May 13, 2013.

## JURISDICTION AND VENUE

6.  The Court has subject matter jurisdiction of this case on the basis of diversity of citizenship under 28 U.S.C. § 1332 as every issue of law and fact in this action is wholly between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.  A substantial part of the events or omissions giving rise to this claim occurred in this judicial district and thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTS

8.  On May 7, 2013, Mr. Aust presented to Dr. Prussin's office at 2955 Market Street, N.E., Suite C-5, Christiansburg, Virginia 24073 for a work-in appointment for ongoing dysphagia per Dr. Prussin's request.

9.  Dr. Prussin documented that Mr. Aust was having ongoing problems with dysphagia.

10. Dr. Prussin concluded that Mr. Aust's April 8, 2013 esophagram demonstrated cervical esophageal stricture but did not provide evidence of a mass or ulceration.

11. Mr. Aust exhibited aspiration during a swallowing study.

12. Dr. Prussin's impression was chronic laryngitis, supraglottic swelling, hoarseness, and dysphagia.

13. Dr. Prussin and Mr. Aust discussed the performance of a esophagoscopy with dilatation.

14. Based upon Dr. Prussin's recommendation, Mr. Aust agreed to undergo an esophagoscopy with dilatation.

15. On May 13, 2013, Mr. Aust presented to Dr. Prussin at Montgomery Regional Hospital at 3700 S. Main Street, Blacksburg, Virginia 24062 for the esophagoscopy.

16. Dr. Prussin began the procedure at approximately 9:57 a.m.

17. Dr. Prussin alleged that Mr. Aust was positioned and draped in normal fashion for esophagoscopy.

18. Dr. Prussin alleged that using the Dedo laryngoscope, the base of the tongue, vallecula, piriform sinuses, supraglottic structures, postcricoid area, and glottis were inspected.

19. Dr. Prussin alleged that there was supraglottic edema consistent with prior radiation, but no suspicious lesions.

20. Dr. Prussin alleged that he removed the laryngoscope.

21. Dr. Prussin alleged that he passed a rigid cervical esophagoscopy through Mr. Aust's oral cavity and into his esophageal inlet.

22. Dr. Prussin alleged that under direct visualization he carefully advanced the scope to approximately sixteen centimeters, where he met resistance.

23. Dr. Prussin alleged that he observed a benign appearing stricture at this point of resistance.

24. Dr. Prussin alleged that he made no attempts to force the scope past this point.

25. Dr. Prussin alleged that he removed the esophagoscope.

26. Dr. Prussin alleged that without difficulty, he dilated the cervical esophagus while visualizing the esophageal inlet intubating the laryngoscope.

27. Dr. Prussin alleged that significant resistance was not met in the cervical esophagus during dilatation.

28. Dr. Prussin alleged that some resistance was met at fifty centimeters.

29. Dr. Prussin alleged that he made no attempt to force the bougie dilators past this point of resistance.

30. Dr. Prussin alleged that he repassed the cervical esophagoscope.

31. Dr. Prussin alleged that he passed the esophagoscope with significant difficulty to its full length and "slowly" withdrew it all while under direct visualization of the esophageal lumen.

32. Dr. Prussin alleged that he observed some mucosal irregularity at the level of the stricture.

33. Dr. Prussin alleged that the mucosal irregularity appeared to be oozing which was controllable through irrigation.

34. Dr. Prussin alleged that he did not observe any gross evidence of neoplasm or perforation.

35. Dr. Prussin alleged that he removed the cervical esophagoscope.

36. Dr. Prussin alleged that he passed the full length rigid esophagoscope. Dr. Prussin alleged that he carefully passed the scope under direct visualization of the esophageal lumen.

37. Dr. Prussin alleged that the scope could not be passed forty centimeters.

38. Dr. Prussin alleged that he could not visualize the distal esophagus.

24801/1/6588805v1

39. Dr. Prussin alleged that he felt that the scope's inability to be passed forty centimeters was secondary to angulation rather than a true obstruction.

40. Dr. Prussin alleged that he slowly removed the esophagoscope.

41. Dr. Prussin alleged that he did not observe any additional lesions.

42. Dr. Prussin alleged that Mr. Aust tolerated the procedure well.

43. Dr. Prussin alleged that he planned to obtain a postoperative esophagram.

44. Dr. Prussin terminated the procedure at approximately 10:16 a.m.

45. By 10:16 a.m., Mr. Aust had sustained at least one perforation to his esophagus.

46. At 10:26 a.m. Dr. Prussin ordered a red barium swallow/esophagram to be performed.

47. Dr. Prussin ordered the esophagram to "rule out" a distal esophagus obstruction and perforation.

48. Prior to the performance of the esophagram, Dr. Prussin discussed Mr. Aust's condition with Dr. Philip E. Hanline.

49. At 11:15 a.m., Mr. Aust arrived to Ambulatory Care Services ("ACS").

50. Sandra S. Royal, SSR received a report from Melissa Linkous.

51. At approximately 11:30 am, Mr. Aust left ACS to undergo the esophagram.

52. By 11:55 a.m., Mr. Aust's esophagram was in progress.

53. Dr. Hanline documented that the purpose of the esophagram was to evaluate Mr. Aust for esophageal perforation.

54. When Dr. Hanline gave Mr. Aust additional contrast with dilute barium, it demonstrated an extension of contrast in his esophagus distal to the left paraesophageal collection, without definite hiatal hernia present.

55. Dr. Hanline was concerned that the collection could indicate a potential esophageal perforation.

56. Dr. Hanline discussed these findings with Dr. Prussin.

57. At approximately 11:56 am, Mr. Aust denied experiencing any chest pain.

58. Ms. Royal observed productive blood tinged mucus.

59. At approximately 11:59 a.m. on May 13, 2013, Dr. Prussin ordered a CT without contrast of Mr. Aust's chest. He also ordered a swallowing evaluation to be performed after the CT.

60. Mr. Aust's CT order provides that the reason for the CT was because of the resistance that Dr. Prussin experienced during the esophagoscopy.

61. Prior to 12:10 pm, Dr. Prussin spoke to Dr. David B. Stoeckle regarding Mr. Aust's condition.

62. At approximately 12:10 pm, Dr. Prussin discussed the findings of the barium swallow with Mr. Aust.

63. During that conversation, Dr. Prussin informed Mr. Aust's son that Dr. Stoeckle was en route from his office to see Mr. Aust.

64. When Mr. Aust's nurse discussed pain control with Dr. Prussin, Dr. Prussin responded that he wanted to wait until Dr. Stoeckle evaluated the patient.

65. By 12:19 pm, Mr. Aust's CT was in progress.

24801/1/6588805v1

66. Dr. Philip E. Hanline reviewed Mr. Aust's CT images.

67. Dr. Hanline's impression was esophageal perforation.

68. By 2:00 pm, Dr. Stoeckle informed Dr. Prussin that he felt that Mr. Aust needed a thoracic surgeon.

69. By 2:00 pm, Dr. Prussin discussed Mr. Aust's condition with Dr. Benjamin Kozower.

70. Dr. Prussin documented that Mr. Aust was given Zosyn and Flagyl per Dr. Kozower.

71. At approximately 2:05 pm, Mr. Aust rated his pain as 10 out of 10.

72. On May 13, 2013, Dr. Stoeckle performed a consultation for Mr. Aust.

73. On May 13, 2013, at approximately 3:15 p.m, Mr. Aust was transferred by helicopter from Montgomery Regional Hospital to UVA Medical Center for the repair of the esophageal perforation.

74. At UVA, Mr. Aust underwent emergent surgery, including an exploratory laparatolony with jejunostomy tube placement, placement of an NG tube in false lumen of esophagus and placement of an OG tube in the true lumen through a stent.

75. During these procedures, Dr. Kowozer observed two esophageal perforations — a significant esophageal injury with proximal dissection flap at 19 centimeters from incisors and distal dissection flap at 35-40 centimeters and a significant 5 centimeter tear in the distal esophagus.

76. During his admission at UVA, Mr. Aust experienced two acute episodes of oxygen desaturations. As a result, he received bilateral chest tubes to drain pleural effusions.

24801/1/6588805v1

## MALPRACTICE

77. Dr. Prussin had a duty to provide Mr. Aust with reasonable care and treatment.

78. Dr. Prussin breach his duty to Mr. Aust in the following respects:

   a. Failed to refer Mr. Aust to a thoracic surgeon and gastroenterologist prior to performing the esophagoscopy; and

   b. Failed to adequately perform Mr. Aust's esophagoscopy.

79. Montgomery Surgery Associates, LLC is vicariously liable for the negligent acts of Dr. Prussin.

## PROXIMATE CAUSE AND DAMAGES

80. As a proximate result of Dr. Prussin's malpractice, Mr. Aust suffered severe pain and injuries.

81. Mr. Aust has also incurred medical expenses and has experienced and continues to experience humiliation, embarrassment, inconvenience, and decreased enjoyment of life.

82. Mr. Aust will incur additional medical expenses in the future for the remainder of his life.

83. Mr. Aust seeks to be fairly compensated for his injuries and damages caused by the defendant's malpractice to the fullest extent permitted under the law of the Commonwealth of Virginia.

## REQUEST FOR TRIAL BY JURY

84. Mr. Aust request trial by jury on all issues.

## CONCLUSION

Wherefore, Ronald Duane Aust moves this Court for judgment against the defendant in the amount of THREE MILLION DOLLARS ($3,000,000) plus his taxable costs with pre-judgment and post-judgment interest.

RONALD DUANE AUST

By: _____
Counsel

S. D. Roberts Moore (VSB No. 3456)
Anthony M. Segura (VSB No. 79040)
GENTRY LOCKE RAKES & MOORE, LLP
800 SunTrust Plaza
P. O. Box 40013
Roanoke, VA  24022-0013
(540) 983-9300
Fax:  (540) 983-9400
Email:  moore@gentrylocke.com

Kendall O. Clay (VSB No. 12702)
Kendall O. Clay, Attorney At Law, P.C.
P.O. Box 852
Radford, VA  24143-0852
(540) 639-9623
Fax:  (540) 633-1275
Email: claylaw@usit.net

*Counsel for Plaintiff*